**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

XIU MEI WEI,

        Petitioner,

    v.

MICHAEL B. MUKASEY, United
States Attorney General,

        Respondent.

No. 07-9537

---

## PETITION FOR REVIEW OF AN ORDER OF
## THE BOARD OF IMMIGRATION APPEALS

---

Submitted on the briefs:*

Lorance Hockert, 401 Broadway, Suite 2001, New York, New York, for
Petitioner.

Mark C. Walters, Assistant Director, and W. Manning Evans, Attorney, Office of
Immigration Litigation, Civil Division, U.S. Department of Justice, Washington,
D.C., for Respondent.

---

Before **MURPHY**, **BRORBY**, and **HARTZ**, Circuit Judges.

---

_____

    *After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**HARTZ**, Circuit Judge.

Xiu Mei Wei is a native and citizen of the People's Republic of China now living in the United States. In November 2002 she sought asylum in this country based on her fear of persecution under China's one-child policy. But because she had long overstayed her visa, removal proceedings were initiated shortly thereafter. An immigration judge (IJ) rejected her asylum application and ordered her removed to China. In December 2004 the Board of Immigration Appeals (BIA) affirmed that order, and in March 2005 it denied her motions to reconsider and to reopen her asylum proceedings. She filed a second motion to reopen in January 2007, claiming that she had new evidence establishing changed conditions in China and that her fourth pregnancy constituted changed personal circumstances. The BIA denied the motion because she had failed to present new evidence of changed country conditions and her claim based on changed personal circumstances was untimely. Mrs. Wei has petitioned this court to review that denial.

We have jurisdiction under 8 U.S.C. § 1252 and deny Mrs. Wei's petition. The BIA did not abuse its discretion in determining that Mrs. Wei had failed to present any new material evidence of changed country conditions. And changed personal circumstances cannot support an untimely motion to reopen after a final order of removal.

## I.    BACKGROUND

### A.    Statutory Scheme for Asylum and Removal

To evaluate the BIA's ruling, we must place it in the context of the procedures for resolving asylum applications and removing aliens unlawfully present in this country.

### 1.    Asylum and Restriction on Removal

An alien seeking asylum in the United States must prove that she is a refugee as defined in the Immigration and Nationality Act (INA) § 101(a)(42), 8 U.S.C. § 1101(a)(42) (2006), and then persuade the Secretary of Homeland Security or the Attorney General to exercise his discretion to grant relief, 8 U.S.C. § 1158(b).  The term *refugee* includes "any person . . . outside [her] country of . . . nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).  "[A] person who has a well founded fear that . . . she will be forced to undergo" an abortion or sterilization "shall be deemed to have a well founded fear of persecution on account of political opinion." *Id.* § 1101(a)(42).

In addition to seeking asylum, an alien can apply for restriction on removal, which would preclude her removal to a particular country.  Restriction on removal is available under the INA, *see* INA § 241(b)(3), 8 U.S.C. 1231(b)(3) (2006), or

-3-

under the United Nations Convention Against Torture (CAT), *see* Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681–822 (1998); 8 C.F.R. § 208.16(c) (2008). Under the INA, restriction on removal is mandatory if an alien can prove that it is more likely than not "that [her] life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999) (stating burden of persuasion). To be granted relief under the CAT, an alien must show that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). If the alien can make the requisite showing, she can still be removed from the United States, but only to a third country where her life and freedom would not be at risk. *Id.* § 208.16(f); *see Aguirre-Aguirre*, 526 U.S. at 419.

Ordinarily, an alien may file only one application for asylum, which must be filed within one year of the alien's arrival in this country. 8 U.S.C. § 1158(a)(2)(B)-(C). (These limits do not apply to applications for restriction on removal. *See* 8 C.F.R. § 208.4(a) (2008).) But § 1158(a)(2)(D) provides an exception to these time and number restrictions "if the alien demonstrates . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay." *Changed circumstances* is not defined in the statute, but the implementing

regulations define the term to include both "[c]hanges in conditions in the applicant's country of nationality" and "[c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum." 8 C.F.R. § 208.4(a)(4)(i)(A)-(B).

### 2.  Removal Proceedings

A removal proceeding is ordinarily "the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3).  A removal proceeding is initiated by issuing to the alien a "notice to appear," *id.* § 1229(a)(1), and is conducted by an IJ in an immigration court, *see id.* § 1229a(a)(1).  Among the aliens who may be found removable are those who have overstayed their authorized admission.  *See* INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B) (2006); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007) (alien found removable under § 1227(a)(1)(B) for overstaying visa).  Even if an alien is otherwise removable, she may challenge the removal at the hearing before the IJ by seeking asylum or restriction on removal.  *See* INA § 240(c)(4), 8 U.S.C. § 1229a(c)(4) (2006); 8 C.F.R. § 1240.1(a)(1)(ii)-(iii) (2008).  At the conclusion of the removal proceeding, the IJ determines whether the alien may be removed from the United States; if so, the IJ enters a removal order.  8 U.S.C. § 1229a(c)(1)(A).  The IJ's order may be appealed to the BIA within 30 days of the decision.  8 C.F.R. § 1003.38(b) (2008).

If the BIA affirms the removal order, the alien may move the BIA to reconsider its decision or to reopen her removal proceedings. *See* 8 U.S.C. § 1229a(c)(6)-(7); 8 C.F.R. § 1003.2(b)-(c). In a motion to reconsider (because of alleged errors in the BIA's analysis), an alien must "specify the errors of law or fact in the previous order," 8 U.S.C. § 1229a(c)(6)(C); in a motion to reopen (to permit consideration of additional information), the alien must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material," *id.* § 1229a(c)(7)(B). An alien may file only one motion to reconsider the decision that she is removable from the United States, and it must be filed within 30 days of entry of the final order of removal. *Id.* § 1229a(c)(6)(A)-(B); 8 C.F.R. § 1003.2(b)(2). An alien is also limited to only one motion to reopen, which must be filed within 90 days of the order. *Id.* § 1229a(c)(7)(A)-(C)(i); 8 C.F.R. § 1003.2(c)(2). But the time restriction on motions to reopen does not apply "if the basis of the motion is to apply for relief under sections 1158 [asylum] or 1231(b)(3) [restriction on removal] of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii).[1]

---

[1]Under § 1229a(c)(7)(C)(iv), the BIA can also grant an untimely motion to reopen if the alien qualifies under a special rule for battered spouses, children,
(continued...)

-6-

### B.    Mrs. Wei's Proceedings

Mrs. Wei entered the United States in January 1997 on a temporary visa effective until April 1 of that year.  She ignored the deadline, but while pregnant with her third child in November 2002, she sought asylum in the United States based on her fear of forced abortion and sterilization if she were to return to China, which has a one-child policy.  In the alternative, she sought a restriction on her removal to China under the INA and under the CAT.  In February 2003 Mrs. Wei was charged with overstaying her visa and was issued a notice to appear before an immigration judge (IJ).  Mrs. Wei conceded removability to the IJ, but reiterated her request for relief in the form of asylum or restriction on removal, under the INA or the CAT.

Mrs. Wei's brief in support of her application for asylum and restriction on removal asserted both changed personal circumstances (becoming pregnant with her third child) and what she termed changed country conditions (the discovery of her third pregnancy by local Chinese officials).  She asserted that these changes excused her from having to apply for asylum within one year of entry into the United States.  She claimed that the birth of her second child in the United States would have led only to a heavy fine if she had returned to China, but that once

---

[1](...continued)
and parents; but that rule is not applicable to this case.

she had become pregnant with her third child, she would be forced to undergo an abortion or sterilization.

In support of her application for asylum Mrs. Wei attached a formal notice sent by authorities in Changle City, Fujian Province (her hometown in China), to her mother in October 2002, advising that if Mrs. Wei did not abort her third pregnancy, she or her husband would be sterilized upon their return to China. She also attached proof of her sister-in-law's sterilization in October 2002 and a letter from the sister-in-law informing Mrs. Wei that the Chinese government had forced her to undergo an abortion and sterilization after becoming pregnant with her third child. In addition, Mrs. Wei attached several newspaper articles and two opinions by United States Courts of Appeals describing enforcement of the Chinese one-child policy through forced abortion and sterilization.

After a hearing in 2003 the IJ denied Mrs. Wei's application for asylum as untimely filed and denied on the merits her applications for restriction on removal under the INA and the CAT. The IJ determined that Mrs. Wei had been in violation of China's family-planning policy since 1998, when she became pregnant with her first child out of wedlock, and she could have applied for asylum at that time. The IJ was not convinced by Mrs. Wei's argument that not until her third pregnancy did she develop a well-founded fear that the Chinese family-planning policy would require her to submit to an abortion and sterilization. Regarding her restriction-on-removal claims, the IJ determined that

Mrs. Wei had not met her burden of showing that it was more likely than not that she would be sterilized if she returned to China because there was no record of how the Chinese government treated citizens with foreign-born children. The IJ ordered Mrs. Wei removed to China.

On August 4, 2003, Mrs. Wei appealed the denial of her application to the BIA, which affirmed the IJ's decision on December 13, 2004. The BIA agreed with the IJ that she had not filed her asylum claim within one year of entry into the United States and had failed to demonstrate changed or extraordinary circumstances justifying the delay. Moreover, she had not met her burden of showing eligibility for restriction on removal under the INA or the CAT. Mrs. Wei had attached to her brief an affidavit of John Aird (a specialist on Chinese population policy) and a copy of *Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004), which had held that the Aird affidavit provided objective evidence supporting a well-founded fear of future persecution if Mr. Guo were returned to China after having children abroad. The BIA noted the submission of these documents but refused to consider any addition to the record before the IJ because Mrs. Wei had not filed a motion to reopen and, in any event, the new evidence would not change the result. Mrs. Wei attempted to petition for review of the BIA's decision, but erroneously filed in the Fifth Circuit rather than the Tenth. Several months later she attempted to refile her petition in the Tenth Circuit.

Both petitions were eventually dismissed for lack of jurisdiction or venue. *See Wei v. Gonzales*, No. 05-9546, 2006 WL 41225 (10th Cir. Jan. 9, 2006).

In January 2005 Mrs. Wei filed with the BIA a motion to reopen or reconsider her application for asylum and restriction on removal. To support reconsideration, she claimed that the BIA had erred in failing to give any weight to the documentary evidence that she had submitted to the IJ. To support reopening, she claimed that she had new evidence that China extends the enforcement of its one-child policy to Chinese citizens with foreign-born children. The evidence consisted of the Aird affidavit presented to the BIA in her appeal, the previously submitted opinion in *Guo*, and unpublished circuit-court decisions similar to *Guo*. The BIA denied Mrs. Wei's motions because she could not establish a prima facie case of eligibility for asylum, restriction on removal, or CAT relief, and the cited opinions were not issued by the Tenth Circuit, whose decisions provided the governing law.

In January 2007, after becoming pregnant with her fourth child, Mrs. Wei filed with the BIA a second motion to reopen, accompanied by a new asylum application. The motion asserted that she had a well-founded fear that she would be forcibly sterilized by the Chinese government, and claimed that she had new evidence that had been unavailable to her during her 2003 removal proceedings. She argued that her fourth pregnancy constituted changed personal circumstances that would support a new claim for asylum and that her right to due process

required the BIA to grant her a new hearing on her asylum claim. In addition, she requested that the BIA exercise its discretion to reopen her removal proceedings sua sponte.

Attached to Mrs. Wei's motion to reopen were the birth certificates of her three children; a letter confirming her fourth pregnancy; and documentary evidence of China's one-child policy set forth in the Family Planning Regulation of Changle City, Fujian Province, and a speech by the Chair of the Chinese Family Planning Association. She also presented a letter from the wife of her husband's cousin explaining how she was forced to undergo sterilization in 2006 after having her second child in China, and a letter from local Chinese authorities informing her mother in December 2006 that if Mrs. Wei and her husband returned to China with her children, either she or her husband would be sterilized by the government.

As legal support for her motion, Mrs. Wei submitted a copy of the opinion in *Guo v. Gonzales*, 463 F.3d 109 (2d Cir. 2006). That opinion set aside the BIA's denial of an alien's motion to reopen, and remanded to the BIA to consider whether documents presented by the alien established changed conditions in China that would entitle her to relief. *Id.* at 115. The documents, published in 2003, were decisions from the Changle City Family Planning Administration and the Fujian Province Department of Family-Planning Administration, which set forth the sanctions applicable to Chinese citizens who had given birth to a child

-11-

while living abroad. *Id.* at 112–13. The decisions indicated that the one-child policy applied to Chinese citizens with foreign-born children and that the sanctions for violation of the policy included forced abortion and sterilization. *Id.* at 113. Because a 2002 State Department report had stated that the Chinese government opposed forced sterilization, the Second Circuit determined that the documents "apparently reflect[ed] the adoption of a new policy in Changle City." *Id.* at 114. Mrs. Wei also attached a copy of the Third Circuit opinion in *Guo v. Ashcroft*, 386 F.3d 556, which she had described in her earlier motion to reopen.

On May 22, 2007, the BIA denied Mrs. Wei's second motion to reopen, ruling it barred by both the one-motion limit and the 90-day deadline for filing motions to reopen. The BIA said that it could consider an asylum application filed more than 90 days after the BIA's original removal order only if the alien qualified for an exception to the 90-day time limit for filing motions to reopen, and Mrs. Wei had failed to qualify for that exception because she had not proved changed conditions in China. The BIA further stated that Mrs. Wei's personal circumstances did not warrant "the exercise of our very limited discretion to reopen *sua sponte*." R. at 3. Mrs. Wei filed in this court a timely petition to review the BIA's denial of her motion to reopen.

## II.    DISCUSSION

Mrs. Wei claims that the BIA improperly denied her motion to reopen because she established changed conditions in China and changed personal

-12-

circumstances, and because due process entitled her to a new hearing. The BIA ruled that she had not presented any evidence of a material change in country conditions and that a change in personal circumstances was not a proper ground for reopening. It also exercised its discretion not to reopen the proceedings sua sponte, a decision not challenged by Mrs. Wei. *See Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004) (court of appeals lacks jurisdiction to review decision not to reopen sua sponte). We have jurisdiction to review BIA orders denying motions to reopen removal proceedings. *Id.* Our review is for an abuse of discretion. *Id.* We hold that the BIA did not abuse its discretion because Mrs. Wei did not establish changed country conditions and her claim of changed personal circumstances was untimely. We also reject Mrs. Wei's due-process claim.

## A. Changed Country Conditions

Under 8 U.S.C. § 1229a(c)(7)(C)(ii) a motion to reopen to apply for asylum based on proof of changed country conditions is not barred by the time restriction on filing motions to reopen if "such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." The BIA did not abuse its discretion in determining that Mrs. Wei had not satisfied this exception.[2] The evidence that she submitted regarding country

---

[2]Although § 1229a(c)(7)(C)(ii) provides an exception only to the 90-day time limit for filing motions to reopen, and not to the numerical limitation (that

(continued...)

conditions was not materially different from her submissions to the IJ and the BIA during her initial removal proceedings. We need not decide whether she was required to show a material change in conditions since her prior motions to reopen and reconsider.

Although some of the documents (the "recent documents") attached to Mrs. Wei's second motion to reopen are dated after both her removal proceeding before the IJ and her appeal of the IJ's decision to the BIA, and thus were unavailable then, they do not provide any new material information regarding conditions in China. The relevant recent documents were (1) a notice from Chinese officials informing her that she would have to undergo sterilization if she returned to China after giving birth to her fourth child; (2) a letter from a relative who had been forced to undergo sterilization after having more than one child; (3) a copy of the Family Planning Regulation of Changle City, Fujian Province; (4) a speech by the chair of the Chinese Family Planning Association; and (5) a copy of *Guo v. Gonzales*, 463 F.3d 109, which discussed the extension of China's one-child policy to Chinese citizens with foreign-born children. These documents

---

[2](...continued) an alien may file only one motion to reopen), the corresponding regulation suggests that proof of changed country conditions would provide an exception to both restrictions. 8 C.F.R. § 1003.2(c)(3)(ii). The Attorney General, however, has not argued that Mrs. Wei's motion to reopen was barred solely because it was her second such motion. We express no view on whether 8 C.F.R. § 1003.2(c)(3)(ii) provides a valid exception to the numerical limitation on motions to reopen.

supported Mrs. Wei's contentions that she could be subject to sanctions based on her American-born children and that forced abortion or sterilization was a potential sanction. But the pertinent content of these documents was already available to Mrs. Wei before the BIA's order of removal. She had attached to her initial application for asylum another notice from Chinese officials directing her to have an abortion or to be sterilized upon her return to China, a letter from another relative stating that the Chinese government had forced her to undergo an abortion and sterilization after violating the one-child policy, and newspaper articles describing China's one-child policy. Then, before the BIA decided her first appeal, she had submitted to it the affidavit of John Aird and a copy of *Guo v. Ashcroft*, 386 F.3d 556, both of which reported that the one-child policy applied to Chinese citizens with foreign-born children. Moreover, Mrs. Wei submitted the Aird affidavit and a copy of *Guo v. Ashcroft*, 386 F.3d 556, again in her first motion to reopen. The BIA did not abuse its discretion by refusing to hear the same argument for asylum for the third time.

## B. Changed Personal Circumstances

The BIA ruled that insofar as Mrs. Wei's motion to reopen was based on changed personal circumstances, it was untimely. Mrs. Wei disputes this ruling. She argues that because 8 U.S.C. § 1158(a)(2)(D) permits filing an untimely or successive application for asylum when the alien shows changed personal circumstances, the BIA should reopen a removal proceeding on the same ground.

Her apparent view is that it makes no sense to permit her to file a new asylum application if the possibility of any relief is foreclosed because she cannot reopen the proceeding in which she has been ordered removed from this country. This argument, however, is based on a false premise. As we proceed to explain, an alien cannot file an application for asylum based on changed personal circumstances whenever she wishes. Section 1158(a)(2)(D) cannot be read in isolation from the other provisions of the INA. In particular, one must consider 8 U.S.C. § 1229a(c)(7)(C)(ii), which strictly limits the circumstances in which the BIA can grant an untimely motion to reopen after entry of a final order of removal. To prevent that provision from being undermined, an asylum application should not be considered after the BIA has ordered the alien's removal unless the removal proceeding itself can be reopened—namely, when the alien has shown changed country conditions.

The regulations implementing the INA appear to take this view, reconciling § 1158 (which allows an untimely or successive asylum application when there have been changed country conditions or personal circumstances) and § 1229a (which limits motions to reopen) by giving full scope to the § 1158 exception only when § 1229a is inapplicable. Under 8 C.F.R. § 208.4, which governs the filing of applications for asylum (a term that includes in this context an application for restriction on removal, *see id.* § 208.1(a)), the place (and manner) of filing depends on the stage of the proceedings. Section 208.4(b) suggests that

-16-

after the completion of removal proceedings an asylum application can be submitted only if it is accompanied by a motion to reopen. It states:

> Filing location--
>
> (3) With the Immigration Court. Asylum applications shall be filed directly with the Immigration Court having jurisdiction over the case in the following circumstances: . . . . (ii) *After completion of exclusion, deportation, or removal proceedings, and in conjunction with a motion to reopen* pursuant to 8 CFR part 3 where applicable, with the Immigration Court having jurisdiction over the prior proceeding. . . .
>
> (4) With the Board of Immigration Appeals. *In conjunction with a motion to remand or reopen* pursuant to [8 C.F.R. § 1003.2] where applicable, an initial asylum application shall be filed with the Board of Immigration Appeals if jurisdiction over the proceedings is vested in the Board of Immigration Appeals under 8 CFR part 3.

(emphases added).

This construction of the pertinent statutes and implementing regulations was recently set forth in a BIA decision, *In re C-W-L*, 24 I & N. Dec. 346, 2007 WL 3228829 (BIA Oct. 31, 2007). The BIA declared that it could not consider a successive and untimely asylum application from an alien subject to a final order of removal, "except as part of a timely and properly filed motion to reopen or one that claims that the late motion is excused because of changed country conditions." *Id.* at 354. The BIA reasoned that "[t]o hold that [§ 1158(a)(2)(D)] . . . is an independent basis for filing an asylum application at any time, including when a final order of removal is in place, would render [§ 1229a(c)(7)(C)(ii), which restricts motions to reopen] . . . superfluous." *Id.* at 351. It explained that

-17-

§ 1229a(c)(7)(C)(ii) was enacted in 1996 as part of a legislative effort "to curb abuse of the asylum process and other parts of removal proceedings," *id.* at 349, and that "[i]t would be highly unlikely that Congress would have intended to provide an alien under a final order of removal with a[n] avenue for relief—such as a successive asylum claim based solely on a change in personal circumstances—but no procedural basis for its exercise," *id.* at 351.  Although § 1158 (which governs applications for asylum) and its implementing regulation, 8 C.F.R. § 208.4(a), are silent regarding any requirement of a simultaneous motion to reopen, the BIA noted that "the requirement of an accompanying motion to reopen once a final order of removal has been entered is clearly set forth in other parts of the statutory and regulatory scheme."  *Id.* at 352.

In our view, the approach of *In re C-W-L* properly reflects the INA's statutory scheme.  Successive and untimely asylum applications may be submitted under § 1158; but once the alien has been ordered removed, the application itself does not prevent execution of the removal order, and the alien therefore must first act to set aside that order—by satisfying the requirements of § 1229a.  Even if this approach is not expressly required by the INA, the statute and regulations are at least ambiguous in this respect, so we must defer to the BIA's reasonable interpretation of those laws.  *See Aguirre-Aguirre*, 526 U.S. at 424 (deference to agency's interpretation of statute); *Tapia Garcia v. INS*, 237 F.3d 1216, 1220

(10th Cir. 2001) (same); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (deference to interpretation of agency's own regulations).

Our view is supported by holdings of other circuit courts. *See Zhang v. Mukasey*, No. 07-3355, 2008 WL 4489268 (6th Cir. Oct. 8, 2008) (deferring to BIA's reasonable interpretation of §§ 1158 and 1229a that alien under final order of removal could apply for asylum only in conjunction with permissible motion to reopen); *Jin v. Mukasey*, 538 F.3d 143, 156 (2d Cir. 2008) (deferring to BIA's reasonable interpretation of §§ 1158 and 1229a and the agency's own regulations that alien under final order of removal could apply for asylum only in conjunction with permissible motion to reopen); *Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008) (same); *Zheng v. Mukasey*, 509 F.3d 869, 871–72 (8th Cir. 2007) (same); *Chen v. Gonzales*, 498 F.3d 758, 759–60 (7th Cir. 2007) (alien could not file application for asylum on the basis of changed personal circumstances after he had been ordered removed and 90-day time limit for filing motion to reopen had expired, unless alien could show changed country conditions that would support motion to reopen).

Mrs. Wei relies on contrary language in another circuit-court opinion, but we are not persuaded. In *Guan v. Board of Immigration Appeals*, 345 F.3d 47 (2d Cir. 2003), the BIA had ordered the alien deported to China, *id.* at 48. She then sought to reopen the removal proceedings under a since-discontinued policy allowing reopening when removal had been ordered before the enactment of

legislation permitting asylum based on coercive population-control policies. *Id.* The Second Circuit affirmed the BIA's denial of the motion to reopen, but it went on to suggest that "another administrative remedy may still be open to [the alien]." *Id.* at 49. Under § 1158(a)(2)(D), the court noted, the alien could request permission to file a successive, untimely asylum application based upon changed personal circumstances. *Id.* The alien, however, had not requested permission to file such an application; so the court's discussion of the possibility was mere dictum. More importantly, that dictum was rejected by the Second Circuit in *Jin*, 538 F.3d at 156.

We note that opinions in two other circuits have made the same suggestion as *Guan*. *See He v. Gonzales*, 501 F.3d 1128, 1133 n.9 (9th Cir. 2007); *Haddad v. Gonzales*, 437 F.3d 515, 518 (6th Cir. 2006). But the dictum in each case has since been rejected by a contrary holding in the same circuit. *See Zhang*, No. 07-3355, 2008 WL 4489268, at *5 (6th Cir.); *Chen*, 524 F.3d at 1033 (9th Cir.).

In short, Mrs. Wei has not satisfied the requirements for reopening her removal proceedings. And she would have no right to file an asylum application without such a reopening.

## C. Due Process

Mrs. Wei's final contention is that the BIA erred in failing to address her claim that her right to due process entitled her to a full and fair hearing on her new application for asylum. The Fifth Amendment guarantee of due process

applies to aliens facing removal. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

But Mrs. Wei's motion to reopen said merely: "Due process requires that the

respondent have a new hearing based on her entirely new asylum claim.

*Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000)." R. at 8. Her cited

authority, *Colmenar*, concerned an IJ who had unfairly prejudged an alien's

asylum claim and limited his presentation of evidence. 210 F.3d at 971. That

circumstance is too removed from the circumstances of Mrs. Wei's case to have

suggested to the BIA the nature of her due-process claim. The BIA could

reasonably have assumed that an unbiased application of the relevant statutes and

regulations would adequately address Mrs. Wei's constitutional argument. In

short, we do not think that her motion adequately presented a due-process

argument.

In any event, we see no denial of due process here. Due process does not

guarantee a party the right to make the same claim before a tribunal repeatedly.

Even in the context of criminal sanctions, second and successive applications for

habeas relief are greatly restricted. *See* 28 U.S.C. § 2244. And courts "routinely

dismiss due process claims that are based solely on the application of statutory

time limits, unless a petitioner points to something in the record suggesting that

she was denied a full and fair hearing which provides a meaningful opportunity to

be heard." *Zheng v. U.S. Dept. of Homeland Sec.*, 245 Fed. App'x 50, 52 (2d Cir.

2007) (internal quotation marks omitted); *see also Jin*, 538 F.3d at 156–58

(rejecting due-process challenge to holding of *In re C-W-L*).

For the foregoing reasons, we DENY the petition for review.