FILED
United States Court of Appeals
Tenth Circuit

July 19, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KHATANBAATAR ZORIG;
OTGONCHULUUN PANDAAN;
TULGA KHATANBAATAR;
MARAL KHATANBAATAR,

Petitioners,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 09-9552
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

Petitioners, citizens of Mongolia, sought asylum, restriction on removal,

and protection under the Convention Against Torture (CAT) in 2004. They

asserted that the lead petitioner, Khatanbaatar Zorig, had been persecuted based

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

on his political opinion and would be subjected to torture if he were returned to Mongolia. The other petitioners are Mr. Zorig's wife, Otgonchuluun Pandaan, and their children, Tulga and Maral Khatanbaatar, whose petitions are derivative of Mr. Zorig's. An immigration judge (IJ) rejected their application; the Board of Immigration Appeals (BIA) dismissed the appeal on October 24, 2008; and petitioners appealed to this court. While that appeal was pending, petitioners filed a timely motion to reopen, alleging newly discovered evidence of translation errors and the deteriorating political situation in Mongolia. The BIA denied the motion to reopen on August 7, 2009. On October 15, 2009, this court affirmed the BIA's determination that Mr. Zorig had not established persecution based on political opinion or that he would have been "subjected to harm at the hands of government officials," and denied the petition for review. *Zorig v. Holder*, 349 F. App'x 306, 311–12 (10th Cir. 2009) (*Zorig I*).

Petitioners now appeal the BIA's order denying their motion to reopen. They have also filed a motion to consolidate this appeal with *Zorig I* and a motion to recall the mandate in *Zorig I*. They contend that the newly discovered evidence compels this court to revisit the *Zorig I* result. The motion to recall the mandate has been denied by the *Zorig I* panel, and we thus deny the motion to consolidate as moot.

# BACKGROUND

The underlying facts were set out in *Zorig I*; consequently, we provide only a brief summary necessary to our review. Mr. Zorig was a member of the Mongolian Democratic Party (MDP), the ruling party until 2000, when the Mongolian People's Revolutionary Party (MPRP) returned to power. Under the MPRP, Mr. Zorig was repeatedly questioned by police about the land on which he operated a restaurant. He was also fired from his job as a pilot for the government-owned civil airline. In 2003 the police took him from his house to a detention center where they referred to his MDP membership and accused him of obtaining the restaurant land illegally. The police informed him that his land would be taken away when a new land law took effect so he should sign away his right to it. When Mr. Zorig refused, he was beaten so severely that he required two weeks' hospitalization. After his release from the hospital, he and his family traveled to the United States, where they timely requested asylum, restriction on removal, and CAT protection.

Petitioners asserted that Mr. Zorig was persecuted because of his political beliefs. The IJ disagreed, concluding that although government officials wanted to take Mr. Zorig's land, their motive was commercial or financial, rather than political. The IJ also rejected the CAT claim, finding that once the government obtained the land, the police would no longer be interested in harming Mr. Zorig. The BIA denied review, "reject[ing] the asylum and restriction-on-removal claims

for failure to link mistreatment to political motives and further stat[ing] Zorig had not demonstrated a sufficient likelihood of persecution necessary for asylum." *Zorig I*, 349 F. App'x at 309 (internal quotation marks omitted). Mr. Zorig then filed a notice of appeal with this court.

Before this court issued the decision in *Zorig I*, petitioners engaged an interpreter to review the tapes of the agency hearings. Asserting that four translation errors in the original hearing caused the BIA to fail to recognize the nexus between Mr. Zorig's political opinion and the government's plan to take his land, and that news articles strengthened their claim that he would be tortured if returned to Mongolia, they filed the present motion to reopen, which the BIA denied.[1] Then this court decided *Zorig I*, holding that the BIA correctly applied

---

[1] Petitioners have focused on the following four alleged translation errors:

(1) Mr. Zorig's attorney asked him if the police accused him of any illegal activity. He responded:
Original translation: "To get this land you didn't follow the rules that's what they kept saying." Admin. R. at 190.
Mr. Zorig's translation: "[T]hey were trying to say that I didn't get this land by it's [sic] procedure." *Id.* at 17.

(2) After Mr. Zorig described the police beating that resulted in his hospitalization, he said it was because he would not sign a land contract. His attorney asked him why they were trying to get him to sign a land contract. He responded:
Original translation: "It must be organized from somewhere else. Still now I wonder who organized this. I wonder. It must be organized from – by somewhere else – someone else. Maybe a member of the Mongolian Republic Party want to have his business on my land." *Id.* at 197.
Mr. Zorig's translation: "I still wonder who ordered this, it must have been
(continued...)

-4-

the "mixed-motive" standard, which requires the applicant to show that "his

mistreatment was motivated, at least in part, by political opinion rather than

_____

[1](...continued)
ordered from somewhere else.  Maybe someone at the Revolutionary Party wanted the land we are at and do some business."  *Id.* at 18.

(3)  Mr. Zorig's attorney asked him why he thought the police accused him of getting the land illegally.  He responded:
Original translation:  "I have no idea until now I wonder about it.  I still wonder why do I must – must I have been target.  Why was I targeted?"  *Id.* at 193.
Mr. Zorig's translation:  "I don't know, I still wonder about it myself.  Why exactly I was within there.  I myself wonder about it."  *Id.* at 19.

(4)  The government attorney posed a question to Mr. Zorig that he asserts was mistranslated as a statement.  His "yes" response, therefore, was intended only as an acknowledgment of the statement, not as agreeing with it.  The two versions are:
Original translation:  "Sir, I'm wondering if you – this whole business with the police where you were brought in several times and then detained, I'm wondering if it had to do strictly with the land because somebody else wanted your business or they wanted to intimidate you out of business."  *Id.* at 227.
Mr. Zorig's translation:  "[T]he[y] called you and questioned you at the police but I wonder that I think that somebody wanted to take your land and that's why they wanted to pressure you so take your land away."  *Id.* at 18.  (Petitioners' reply brief asserts error in the omission from the government attorney's question of the language that the police harassment "had to do 'strictly with the land.'"  Aplt. Reply Br. at 23.  But the brief gets things backwards.  The original translation contained this language; his translation did not.)

In their reply brief, petitioners assert for the first time that the original interpreter inserted a phrase that Mr. Zorig did not utter.  Because they did not raise this issue with the BIA, we lack jurisdiction to consider it.  *See* 8 U.S.C. § 1252(d)(1) (providing reviewing court with jurisdiction only over claims alien has exhausted administratively); *Ribas v. Mukasey*, 545 F.3d 922, 930–31 (10th Cir. 2008) (appellate court was without jurisdiction to consider issue not exhausted by presentation to the BIA).

economic considerations." *Id.* at 311. We further held that substantial evidence supported the BIA's findings and denied the petition for review.

In denying petitioners' motion to reopen, the BIA determined that "the alleged errors in translation [were] not substantive or material, and [Mr. Zorig] ha[d] not demonstrated that the corrections would alter the outcome of the proceeding or that he was otherwise unfairly prejudiced." Admin. R. at 3-4. The BIA further concluded that the news articles describing a riot following the 2008 election did not show that Mr. Zorig was entitled to CAT protection.

On appeal, petitioners claim that the BIA erred in failing to recognize that the mistakes in translation likely would have changed the outcome of their initial asylum proceeding because the correct translation was unequivocal as to Mr. Zorig's position that he was tormented, fired from his job, and had his property taken because of his political opinion. They argue that the IJ and the BIA in the initial proceedings specifically relied on the incorrect translation, thus showing that the mistranslation materially contributed to an erroneous result, which violated their rights to due process. In addition, they claim that the new evidence in the form of news articles shows that Mr. Zorig likely will be tortured if he is removed to Mongolia.

## ANALYSIS

An alien may file one motion to reopen to permit the agency to consider new information. The alien must "state the new facts that will be proven at a hearing to be held if the motion is granted." 8 U.S.C. § 1229a(c)(7)(B); *accord* 8 C.F.R. § 1003.2(c)(1). "We have jurisdiction to review BIA orders denying motions to reopen removal proceedings. Our review is for an abuse of discretion." *Wei v. Mukasey*, 545 F.3d 1248, 1254 (10th Cir. 2008) (citation omitted).

When translation is "less than perfect," remand is appropriate only if the alien can demonstrate that translation errors unfairly prejudiced him or prevented him from presenting his case. *Hadjimehdigholi v. INS*, 49 F.3d 642, 650 (10th Cir. 1995). On review of the alleged mistranslations in the context of the full hearing transcript, we conclude that the BIA did not abuse its discretion in holding that there was no material difference in the translations. Accordingly, the BIA correctly determined that petitioners had not shown a violation of their due process rights caused by any translation errors. And the alleged errors did not "materially affect [their] ability to obtain meaningful review." *Witjaksono v. Holder*, 573 F.3d 968, 975 (10th Cir. 2009) (internal quotation marks omitted).

We likewise reject petitioners' contention that the BIA abused its discretion in denying reopening of the CAT claim based on unspecified translation errors and news articles published after the IJ's decision. They argue that the articles

show that it is more likely than not that Mr. Zorig will be tortured if he is removed to Mongolia. But the BIA could reasonably decide that the articles, even taken together with the evidence at the hearing before the IJ, do not indicate that Mr. Zorig would be subject to torture "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," as required to qualify for CAT protection. 8 C.F.R. § 1208.18(a)(1). Nor are the translation errors pointed out to the BIA sufficient to require a rehearing on the CAT claim. The BIA did not abuse its discretion in refusing to reopen the case on these grounds.

## CONCLUSION

Petitioners' motion to consolidate this appeal with *Zorig I* is DENIED. The petition for review is also DENIED.

Entered for the Court

Harris L Hartz
Circuit Judge