FILED
United States Court of Appeals
Tenth Circuit

October 18, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SUSHMA KC,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 11-9502
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

Sushma KC petitions for review of the Board of Immigration Appeals'

("BIA") denial of her motion to reopen or reconsider its previous decision

denying KC asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT"). Because the BIA abused its discretion by denying

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

KC's motion to reopen or reconsider, we grant the petition for review in part, deny it in part, and remand for further proceedings.

**I**

**A**

KC is a native and citizen of Nepal, a country that was plagued by an insurgency led by various Maoist groups in the 1990s and early 2000s. This insurgency featured kidnappings, "disappearances," violence, and extortion. At her asylum hearing, KC testified that she had been active in the Nepali Congress Party ("NCP"), a non-Maoist political party, since 1991. As part of her work for the NCP, she became the head of "Save the Children," an effort to prevent the Maoists from recruiting orphaned children as child-soldiers. According to KC's testimony, because the Maoists did not appreciate her attempts to rescue children whom they sought to impress into their army, they embarked on a campaign of intimidation designed to deter her from her activities on behalf of Save the Children and the NCP.

First, the Maoists told KC's father-in-law (himself a long-time Nepalese political figure) to "stop" KC from engaging in anti-Maoist activities. Her father-in-law relayed this warning to KC, but she continued her activities. Some time later, in July 2003, a Maoist called KC and threatened her with harm if she did not stop her activity with Save the Children. The caller also told her she should leave the NCP and join the Maoists. Following this incident, KC filed a police

report, to no effect. Because of the threats she had received, KC temporarily left Nepal in September 2003 at the urging of her family.

After KC returned to Nepal in 2004, the Maoists demanded that she pay a fine of 300,000 rupees (about $4,000 or $5,000)—a large sum of money in Nepal. At her asylum hearing, the Immigration Judge ("IJ") asked KC why the Maoists imposed this fine on her. KC responded, "[T]hey told me to leave [the] Congress party." She further explained, "They just threatened me that if you don't give this money and don't leave the party, we will know what to do." On cross-examination, she stated that the Maoists told her to pay the money "[b]ecause I was the one in the party."

KC did not pay the fine, and did not leave the NCP. In September 2004, about a month after the telephone threats, KC's husband suddenly vanished. Approximately four days after he disappeared, she received a call from him, saying he would come home soon. During the call, he "was very scared and his voice was shivering." KC testified that she never saw her husband again. She presented no evidence at the hearing, however, directly connecting her husband's disappearance to the Maoists.

KC also testified that on October 9, 2004, Maoists detained her and her companions, and began to beat them until neighboring villagers came to their rescue. As a result of the beating, the hospital treated KC for bruises, scratches, and bleeding. About a week later, KC's mother-in-law received a phone call

-3-

stating that if KC did not pay the 300,000 rupee fine, the Maoists would "cut your daughter-in-law's head [off]." At this point, in November 2004, KC left Nepal for the United States.

**B**

After arriving in this country, KC filed a timely application for asylum, withholding of removal, and protection under the Convention Against Torture. On June 23, 2008, an IJ denied her applications, and ordered her to voluntarily depart or be removed to Nepal. In his oral decision, the IJ credited KC's testimony described above. In particular, he noted the threats she received, and that "the most recent and graphic of them was that her head would be cut off unless she paid 300,000 rupees." The IJ concluded, however, that KC failed to satisfy the "one central reason" test, see 8 U.S.C. § 1158(b)(1)(B)(i), which required showing that one of the central reasons the Maoists targeted her was because of her political beliefs.

KC appealed to the BIA, which upheld the IJ's decision. The BIA concluded that "[t]he Immigration Judge reasonably determined based on the record as a whole that the Maoists' demands for money were acts of extortion not related to the respondent's political opinion." The BIA did not address KC's testimony that the Maoists fined her for failing to leave the NCP. The BIA also upheld the IJ's determination that the record was not sufficiently clear as to the reason for KC's husband's disappearance, and therefore, this incident could not

-4-

support her asylum claim. In addition, the BIA denied KC's motion to remand her case to the IJ so that he could consider additional evidence concerning her husband's disappearance.

KC did not petition this court for review of the BIA's decision.[1] Instead, she filed a motion with the BIA to reconsider or reopen its decision, arguing, among other things, that the fine imposed on her was "related to her opposition to the Maoists." The BIA denied the motion, again concluding that KC had failed to show that the Maoists' demands for money or her husband's disappearance were "related to [her] political opinion[s]." The BIA further found that although KC had shown changed country conditions in Nepal, she had failed to show that the alleged changes were material to her claims for asylum or withholding of removal.

**II**

We review the BIA's order denying reconsideration or reopening for abuse of discretion. Wei v. Mukasey, 545 F.3d 1248, 1254 (10th Cir. 2008) (motion to reopen); Belay-Gebru v. INS, 327 F.3d 998, 1000 n.5 (10th Cir. 2003) (motion for reconsideration). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of

---

[1]As a result, this court lacks jurisdiction to review the BIA's order of May 25, 2010, dismissing her appeal from the IJ's decision denying asylum. See Stone v. INS, 514 U.S. 386, 405-06 (1995).

any reasoning, or contains only summary or conclusory statements." Kechkar v. Gonzales, 500 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks omitted).

**III**

**A**

Although the abuse-of-discretion standard is rigorous, our review convinces us that the BIA abused its discretion when it affirmed that the Maoists' demands for money from KC did not constitute past persecution based on her political opinion. To meet this standard, KC merely had to show that her "political opinion . . . was 'one central reason' for her persecution, not that it was the sole reason for it." Castro v. Holder, 597 F.3d 93, 103 (2d Cir. 2010).

According to KC's testimony, the Maoists told her that the 300,000 rupee fine was assessed against her because of her political activities. The IJ summarized the key aspect of KC's testimony as follows:

> She testified that the Maoists . . . approached her and assessed a "fine" of 300,000 rupees. . . . She testified that she was assessed the fine for failure to leave [the] Nepali Congress Party, she did not pay the amount.

The IJ credited this testimony. Nevertheless, the IJ—inexplicably—concluded that the Maoists did not act based on KC's political activity, but extorted her exclusively for financial gain. This analysis suffers from a serious disconnection between the facts the IJ accepted and the legal conclusion he reached.

Because the BIA adopted the IJ's analysis without further explication, both to dismiss KC's appeal and to deny reconsideration, the BIA's decision likewise lacks "rational explanation." Kechkar, 500 F.3d at 1084. Accordingly, we hold that the BIA abused its discretion and remand for further consideration.

**B**

KC raises a number of other issues in her petition for review which do not satisfy the exacting abuse-of-discretion standard. We therefore deny her petition as to these issues.

KC contends, first, that the BIA should have reopened or reconsidered her case because she demonstrated her husband's kidnaping was causally linked to her political persecution by the Maoists. At her asylum hearing, however, KC offered only her own speculation that this was the reason for her husband's disappearance. KC then argued in her motion for reconsideration that circumstantial evidence supported this claim, but the BIA found that this was not a sufficient basis on which to reconsider its prior decision. We discern no abuse of discretion in the BIA's decision on this issue.

As part of her appeal to the BIA, KC also requested that the record be remanded so that the IJ could consider a summary of a 2008 police investigation report, which stated that her husband had been seen at a Maoist prison camp in November 2004. The BIA found that the document was not contemporaneous, was not authenticated, and that KC failed to provide an adequate explanation of

why she had been unable to obtain the summary prior to the IJ hearing. KC explained the delay in her motion for reconsideration, but the BIA concluded this reasoning did not provide an adequate reason to reopen its previous decision. Particularly in light of the other reasons the BIA gave for rejecting a remand (lack of authentication and lack of a contemporaneous record), KC has not demonstrated an abuse of discretion on this issue.

In her motion for reopening or reconsideration, KC also submitted materials on human rights practices in Nepal, alleging that they showed that conditions in Nepal had deteriorated since 2007 and that she would therefore face persecution if she were returned there. The BIA found that she had shown changed country conditions, but that she had failed to show that the alleged changes (which involved the resignation of Nepal's prime minister) were material to her claims for asylum or withholding of removal. This determination does not represent an abuse of discretion.

Finally, KC argues that the record compels the conclusion that she is entitled to relief under the CAT. In order to receive CAT protection, "an applicant must demonstrate it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Ritonga v. Holder, 633 F.3d 971, 978 (10th Cir. 2011) (quotation omitted). The torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). As part of its

order denying her motion to reopen, the BIA found that KC had failed to "make a prima facie showing that the Nepalese Government would be willfully blind to any torturous acts committed against her by third parties." This determination was not an abuse of the BIA's discretion.

## IV

The petition for review is **GRANTED** in part, **DENIED** in part, and the case is **REMANDED** for further proceedings consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge