**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JIN HUA LIN,

        Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

        Respondent.

No. 11-9575
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

Jin Hua Lin petitions for review of the decision of the Board of Immigration Appeals (BIA) denying as untimely her motion to reopen her 2003 deportation proceedings. We exercise jurisdiction under 8 U.S.C. § 1252 and deny the petition.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Ms. Lin is a native of the People's Republic of China.  Her home was in Shou Zhan Town, Changle City, Fujian Province.  She was admitted to the United States in 1993 on a K-1 fiancée visa.  She did not marry the sponsor of her K-1 visa.  Instead she married her current husband in 1995 and has since had three children with him, all born in the United States.

In 2002, Ms. Lin was served with a notice to appear, charging her with overstaying her visa.  She conceded removability, but requested asylum, restriction on removal, and protection under the Convention Against Torture (CAT).  On October 27, 2003, an immigration judge (IJ) denied relief, ordered her removed to China, and granted her voluntary departure.  Ms. Lin filed an appeal with the BIA, which was denied in 2005.  She did not file a petition for review with this court, nor did she depart voluntarily.

In 2011, Ms. Lin filed a motion to reopen to reapply for asylum, restriction on removal, and CAT protection.  She asserted that if returned to China, she would be persecuted for practicing her Christian faith and she would be subject to China's coercive family planning policies because she has three children.  The BIA denied the motion as untimely, concluding that Ms. Lin had not presented evidence of a material change in country conditions and that reopening could not be based on a change in her personal circumstances.  Ms. Lin petitions for review.

## II.    Legal Standards

Generally, "[a]n alien is . . . limited to only one motion to reopen, which must be filed within 90 days of the [BIA's decision to affirm the removal] order." *Wei v. Mukasey*, 545 F.3d 1248, 1251 (10th Cir. 2008) (citing 8 U.S.C. § 1229a(c)(7)(A-C(i)).  But the time limitation for filing a motion to reopen is inapplicable if the motion is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii).  "[I]n a motion to reopen (to permit consideration of additional information), the alien must 'state the new facts that will be proven at a hearing to be held if the motion is granted, and [the motion] shall be supported by affidavits or other evidentiary material.'" *Wei*, 545 F.3d at 1251 (quoting 8 U.S.C. § 1229a(c)(7)(B)); *see also* 8 C.F.R. § 1003.2(c)(1).

We review the BIA's decision to deny a motion to reopen for an abuse of discretion.  *Wei*, 545 F.3d at 1254.  "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) (internal quotation marks omitted).  The BIA does not abuse its discretion, however, when although succinct, the decision's "rationale is clear, there is no departure from established

policies, and its statements are a correct interpretation of the law." *Id.* (internal quotation marks omitted).

## III.   Discussion

There is no dispute that Ms. Lin's motion to reopen, filed in 2011, was filed more than 90 days after the BIA's 2005 affirmance of the IJ's 2003 order denying relief.  Thus, to permit reopening her proceedings, Ms. Lin was required to produce material evidence that was not available at the time of the IJ's 2003 hearing demonstrating changed conditions in China in 2011.

## A.  Religious Persecution

Ms. Lin asserts that the BIA erred in its characterization of the evidence concerning persecution of Christians in China.[1]  She avers that the BIA characterized the 2003 religious intolerance as more severe than it was, which made more difficult her task to show that religious intolerance had increased by 2011.

Ms. Lin contends that various documents support her argument that religious persecution in 2003 was not as severe as the BIA found.  For example, she argues that the BIA disregarded the finding of the 2002 U.S. Department of State Country Report (2002 Country Report) that official repression of Christians in Fujian

---

[1]     Ms. Lin claims that her evidence "established a systematic increase in the persecution of Christians in China since . . . October 27, 2003."  Aplt. Br. at 26. Although she argues that "the systematic arrest, detention and physical abuse of Christians in China establish a pattern and practice of persecution of Christians," *id.* at 35, she relies on evidence that conditions have worsened, rather than on any specific evidence that China has instituted a "system" to persecute Christians.

- 4 -

Province had "'eased somewhat'" in 2002. Aplt. Br. at 29 (quoting Admin. R. at 1251). But the BIA relied on the 2002 Country Report's observations that "[o]verall, government respect for religious freedom remained poor" and crackdowns continued against unregistered Christian groups. Admin. R. at 1251. Therefore, Ms. Lin's quoted ambiguous language does not cast doubt on the BIA's conclusion that conditions for Christians were poor in 2003.

Ms. Lin's other arguments that the BIA misinterpreted the record concerning 2003 conditions are likewise unavailing. She claims that a 2004 news article documented an increase in respect for religious freedom, but as the BIA found, the article actually documented religious crackdowns in 2003. *Id.* at 323-24. Ms. Lin further contends that the 2007 Refugee Review Tribunal Australia Research Response showed minimal persecution in 2003 and intensified persecution in more recent years, but as the BIA found, the report documented minimal incidents of religious persecution in 2003 and later (as late as 2006), so did not show a material change. *Id.* at 267-71.

Ms. Lin also argues that the BIA misconstrued the documentary evidence and thus incorrectly found that religious persecution in China had not worsened materially between 2003 and 2011. She points to the 2007 International Religious Freedom Report that stated, "the [Chinese] Government's respect for freedom of religion remained poor." *Id.* at 375. The BIA recognized this, *id.* at 4-5, and also cited to the 2008 International Religious Freedom Report for China finding that religious

repression had intensified in some areas, but not identifying Fijian Province as one of those areas, *see id.* at 5. Ms. Lin further relies on an October 2008 news article opining that "[a]nimosity toward unregistered religious activity intensified before the Olympics and isn't going to fade soon," but the article reported that "[t]he 2007 incidents [of religious repression] were relatively consistent with China's human rights record," *id.* at 209. Ms. Lin also relies on other news articles describing government crackdowns on Christian worship. *Id.* at 217, 327. The BIA recognized that the documents described religious crackdowns well after 2003, but because crackdowns were occurring in 2003, Ms. Lin had failed to show a material change in conditions. Accordingly, the BIA did not abuse its discretion by concluding that conditions in China for Christians had not changed materially between 2003 and 2011.

## B. Coercive Family Planning

Ms. Lin also asserts that changed country conditions concerning coercive family planning warranted reopening her proceedings. She challenges the BIA's determination that the documents issued by officials in Shou Zhan Town did not refer to the use of force when referring to sterilizations and abortions, but instead used social compensation fees, check-ups, and voluntary programs to encourage compliance with family planning policies.[2] Ms. Lin maintains that the background

---

[2] The BIA assumed, without deciding, that those documents were authentic. Admin. R. at 11 n.5.

documents demonstrated that the use of force was authorized in Fujian Province, where family-planning authorities were authorized to take "remedial measures" to remedy "out-of-plan" pregnancies. Aplt. Br. at 44 (italics and internal quotation marks omitted). She argues that the expression "remedial measures" is the same as "compulsory abortion." *Id.* (italics and internal quotation marks omitted). For this proposition, she relies on the 2009 Annual Report from the Congressional-Executive Commission on China (2009 Annual Report). But she submitted to the BIA only 20 pages of the 300-page 2009 Annual Report. The BIA therefore found it difficult "to assess the information contained in the report or to rely on the report to reach any valid conclusions." Admin R. at 8 n.3. More specifically for our review, the language quoted in her brief is not from the 2009 Annual Report. *See* Aplt. Br. at 44 (quoting Admin. R. at 438). We decline to search through the administrative record to locate support for Ms. Lin's argument. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) (stating court of appeals will not search the record in an effort to determine if an argument is supported). Even so, Ms. Lin does not challenge the BIA's requirement that the evidence be geographically specific, and the BIA did not abuse its discretion in concluding that the family-planning policies for Ms. Lin's geographic area did not authorize forced sterilization or abortion.

Ms. Lin also complains that the BIA required her to produce evidence that was more recent than 2009, while relying on the 2007 U.S. Department of State Profile on Asylum Claims and Country Conditions from China (2007 Profile) to conclude that conditions had not changed between 2003 and 2011.[3] We need not address Ms. Lin's claim that the documents pertaining to her hometown were sufficiently current because as discussed above, the BIA did not abuse its discretion in concluding that those documents did not authorize the use of force.[4]

Finally, Ms. Lin asserts that her changed personal circumstances warrant reopening. Although changed personal circumstances may be relevant to eligibility for asylum, they do not satisfy the requirements for reopening removal proceedings. *Wei*, 545 F.3d at 1250, 1255-57.

---

[3]     The BIA relied on the 2007 Profile as articulating "the provisions of China's national family planning law." Admin. R. at 10. The BIA may properly rely on State Department country reports. *Yuk v. Ashcroft*, 355 F.3d 1222, 1235-36 (10th Cir. 2004).

[4]     Because we uphold the BIA's determination that Ms. Lin failed to produce material evidence of changed country conditions, we do not consider whether China's family-planning policies would apply to her in the same way they would to a family whose children were born in China. *See, e.g., Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 216 (BIA 2010) (noting that alien had "not presented any evidence of a Chinese national who has been subjected to forcible sterilization or sanctions rising to the level of persecution after returning to China with two United States citizen children"), *abrogated on other grounds by Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012).

## IV. Conclusion

For the reasons stated above, we conclude that the BIA did not abuse its discretion in denying Ms. Lin's motion to reopen as untimely. The petition for review is DENIED.

Entered for the Court

Wade Brorby
Senior Circuit Judge