**UNITED STATES COURT OF APPEALS**

**June 2, 2011**

**FOR THE TENTH CIRCUIT**

OUSMANE BA,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 10-9580
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **ANDERSON**, and **HOLMES**, Circuit Judges.

This immigration case involves an alien who claims he is Ousmane Ba, a

native and citizen of Mauritania who entered the United States using "a Senegalese

passport under the name of Mamadou NDao," Admin. R. at 294. Mr. Ba seeks

review of a Board of Immigration Appeals's (BIA) order denying his Motion to

Reopen and Reconsider Removal Proceedings Based on New Evidence (Motion to

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Reopen).  Exercising jurisdiction under 8 U.S.C. § 1252, *see Wei v. Mukasey*, 545

F.3d 1248, 1254 (10th Cir. 2008), we deny Mr. Ba's petition for review.

## Background

Mr. Ba asserts that he entered the United States at John F. Kennedy

International Airport in New York on July 15, 2005, using the passport of a

Mr. NDao.  On December 14, 2005, Mr. Ba filed an application for asylum,

restriction on removal,[1] and relief under the Convention Against Torture (CAT).

In support, he submitted a Form I-94 in the same name as that on the Senegalese

passport he had used "to [try to] solidify his time of entry into the U.S.,"

Admin. R. at 285.  He also presented a refugee card in support of his claim that he

had lived in Senegal from April 1989 until July 2005, when he arrived in the

United States.

In February 2006, the Department of Homeland Security (DHS) found

Mr. Ba statutorily ineligible for asylum and referred his case to an immigration

judge (IJ).  Thereafter, the DHS served Mr. Ba with a Notice to Appear, charging

him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as "[a]n alien present

---

[1]     "Restriction on removal was known as *withholding of removal* before
amendments to the [Immigration and Nationality Act] made by the Illegal
Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L.
No. 104-208, 100 Stat. 3009."  *Ismaiel v. Mukasey*, 516 F.3d 1198, 1200 n.2
(10th Cir. 2008).  Although "[t]he regulations under the INA . . . retain the former
term *withholding of removal*, *see, e.g.*, 8 C.F.R. § 208.16(b), and both the IJ and
the BIA have referred to *withholding of removal*," this court uses "the statutory
term *restriction on removal*."  *Ismaiel*, 516 F.3d at 1200 n. 2.

in the United States without being admitted or paroled . . . ." In March 2006, Mr. Ba appeared with counsel before an IJ and conceded his inadmissability, but maintained that he had entered the United States on July 15, 2005, at John F. Kennedy International Airport, using an assumed identity. Mr. Ba's hearing was continued until May 1, 2006. Meanwhile, the DHS submitted Mr. Ba's refugee card to a forensic document examiner employed by the DHS's Forensic Document Laboratory (FDL) to determine whether the refugee card was "authentic." Admin. R. at 639.

At Mr. Ba's May 1, 2006, hearing, he testified that he and his family were expelled from Mauritania on April 29, 1989, by "military people," *id.* at 141, because of questions regarding whether they were citizens of that country. Mr. Ba claimed that he and his family were forced to cross into Senegal where they lived in a Red Cross refugee camp for five to six years. He explained that it was in this refugee camp that he was issued the refugee card he had submitted in support of his application for asylum, restriction on removal, and relief under the CAT. He further testified that between 1995 and 1996, he left the refugee camp and worked for a Lebanese man in Dakar, Senegal, until he departed for the United States in July 2005. Mr. Ba stated that the Lebanese man paid for him to travel to the United States using someone else's passport, and that Mr. Ba did so in the company of another individual whose name he never learned and who confiscated

-3-

Mr. Ba's plane ticket and (fraudulent) passport after they went through customs in the United States.

At the end of the May 1, 2006, hearing, the IJ granted Mr. Ba asylum. In doing so, the IJ acknowledged that he did not yet have a forensics report for the refugee card and stated that if "further forensic review indicate[s] that the person on the refugee [card] is not [Mr. Ba], then [the IJ] would certainly consider favorably a motion to reopen" filed by the DHS. *Id.* at 116.

In July 2006, the DHS filed a motion to reopen, asserting that the FDL had determined that the refugee card submitted by Mr. Ba was "counterfeit," *id.* at 648, which "discredit[ed] [Mr. Ba's] testimony regarding his asylum eligibility and specifically discredit[ed] his claim of identity," *id.* at 646 (citing *In re O-D-*, 21 I. & N. Dec. 1079, 1082 (BIA 1998)). Mr. Ba opposed the DHS's motion to reopen, but in July 2006, the IJ granted the DHS's motion.

At the reopened removal proceedings in 2007, counsel for Mr. Ba cross-examined the FDL examiner who had analyzed Mr. Ba's refugee card. The proceedings were continued until May 12, 2008, at which time Mr. Ba was further questioned about the refugee card and when he came into possession of it. At the end of the hearing, the IJ reversed his May 1, 2006, grant of asylum, finding Mr. Ba ineligible for asylum, restriction on removal, and protection under the CAT. Specifically, the IJ found that the forensic document "examiner testified convincingly that the refugee [card] is counterfeit." Admin. R. at 105. The IJ also

found that Mr. Ba gave conflicting testimony regarding when he was issued the refugee card. Thus, the IJ found incredible Mr. Ba's claims and ordered him removed to Mauritania or, alternatively, to Senegal. On February 26, 2010, the BIA dismissed Mr. Ba's appeal of the IJ's May 12, 2008, decision.

Mr. Ba did not petition for judicial review within thirty days of the BIA's February 26, 2010, decision, as required by 8 U.S.C. § 1252(b)(1). Rather, on May 27, 2010, Mr. Ba filed with the BIA the Motion to Reopen here at issue. As grounds for the Motion he asserted he had "obtained new evidence, including [(1)] his original Mauritanian birth certificate," Admin. R. at 23, that, he claimed, he "was only able to obtain . . . after a pilot repatriation program that occurred before Mauritania's democratically elected president was ousted in a military coup d'etat," *id.* at 24; (2) his children's Senegalese refugee camp school identity cards; (3) a "Certification," dated March 22, 2007, from the "President of [the Senegalese refugee camp] . . . [stating] that Mr. Ousmane Ba . . . does reside in the stated refugee camp," *id.* at 39; (4) materials that Mr. Ba claimed to be "identity documents from [the President of the refugee camp], confirming Mr. Ba's presence in the camp," *id.* at 23; and (5) "the birth certificate of his youngest child, born in [the Senegalese refugee camp], as proof of [Mr. Ba's] identity and presence at the . . . camp," *id.*

On October 18, 2010, the BIA denied Mr. Ba's motion to reopen. In particular, it held that Mr. Ba had failed to adequately explain why he did not

submit his new identification documents earlier, as required under agency rules. The BIA acknowledged Mr. Ba's contention that the new evidence became available only through a recent pilot program of the Mauritanian government, but it nonetheless rejected his argument because he gave "no details regarding such a program, and he also [did] not explain *when* such a program may have permitted him to obtain such documents." *Id.* at 7 (emphasis added). In addition, the BIA noted Mr. Ba's failure to address his previous submission of an "identity document [that] had been determined [to be] fraudulent." *Id.* Ultimately, the BIA concluded that Mr. Ba had failed to "convince [the BIA] to disturb [its] prior decision." *Id.* Mr. Ba petitions for review of the BIA's denial of his Motion to Reopen.

## Discussion

We review for an abuse of discretion the BIA's order denying Mr. Ba's Motion to Reopen. *See Wei*, 545 F.3d at 1254. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (internal quotation marks omitted).

In the three-page argument section of Mr. Ba's appellate brief, he contends the BIA abused its discretion in denying his Motion to Reopen because it "provided no rational explanation for the basis of its denial as the denial contained only summary or conclusory statements regarding the burden of proof and the

standard of review it held to Mr. Ba," thereby violating his right to due process. Pet'r Opening Br. at 5. Mr. Ba's contentions are misplaced.

The BIA's denial of the Motion to Reopen was based on its determination that Mr. Ba failed to explain why the identification documents he submitted with his Motion to Reopen were previously unavailable, and he neglected to provide details about the pilot program or when it enabled him to obtain the documents. Contrary to Mr. Ba's position, this is an acceptable basis for denying the Motion to Reopen; indeed, the applicable regulation–upon which the BIA relied–instructs that "[a] motion to reopen proceedings shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1); *see also Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) (observing that "[t]he BIA may deny a motion to reopen" where "the movant has not introduced previously unavailable, material evidence" (internal quotation marks omitted)).

The BIA's denial of the Motion to Reopen was also based on its conclusion that Mr. Ba failed to demonstrate that the identification documents would likely change the result of its previous decision. This, too, is an acceptable basis for

denying the Motion to Reopen. As has often been noted (and as was noted by the

BIA in denying the Motion to Reopen):

> the [BIA] ordinarily will not consider a discretionary grant of a motion to [reopen] unless the moving party meets a '*heavy burden*' and presents evidence of such a nature that the [BIA] is satisfied that if proceedings before the immigration judge were reopened, with all the attendant delays, the new evidence offered *would likely change the result in the case*.

*Matter of Coelho*, 20 I. & N. Dec. 464, 473 (1992) (emphasis added) (citing *INS v. Doherty*, 502 U.S. 314, 322-24 (1992), and *INS v. Abudu*, 485 U.S. 94, 102-11 (1988)).[2]  Additionally, Mr. Ba submitted the allegedly new identification documents without addressing the IJ's or the BIA's previous determinations that the refugee card he had submitted was counterfeit.

---

[2]    To the extent Mr. Ba claims his due process rights were violated, his argument is without merit. As best we can tell, Mr. Ba has been afforded all the process he was due since the inception of his removal proceedings more than five years ago. *See Schroeck v. Gonzales*, 429 F.3d 947, 951-52 (10th Cir. 2005) ("[T]he procedural safeguards [in removal proceedings] are minimal because aliens do not have a constitutional right to enter or remain in the United States. An alien in removal proceedings is entitled only to the Fifth Amendment guarantee of fundamental fairness. Therefore, when facing removal, aliens are entitled only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." (citations and internal quotation marks omitted)).

**Conclusion**

For the reasons stated above, we conclude that the BIA did not abuse its discretion by denying Mr. Ba's Motion to Reopen. The petition for review is therefore DENIED.

Entered for the Court


Jerome A. Holmes
Circuit Judge