FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

December 8, 2022

Christopher M. Wolpert
Clerk of Court

_____

ADNAN KHUDAIR SHAREEF AL-
GHIZI,

Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

Respondent.

No. 21-9582
(Petition for Review)

_____

## ORDER AND JUDGMENT*

_____

Before **TYMKOVICH**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.

_____

The United States admitted Adnan Al-Ghizi as an Iraqi refugee.  Following his

conviction for violating a protective order, an immigration judge (IJ) ordered Al-

Ghizi's removal to Iraq in 2012.  Al-Ghizi filed a motion to reopen removal

proceedings based on changed country conditions and ineffective assistance of

counsel.  An IJ denied his motion, and the Board of Immigration Appeals dismissed

his appeal.  He now seeks review of the Board's denial.  We deny Al-Ghizi's petition

for review because the Board did not abuse its discretion in concluding that he failed

---

* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to show a material change in country conditions and that his prior counsel's ineffective assistance prejudiced him.

## I. Background

The United States admitted Al-Ghizi as a refugee in 1996. Several years later, a state court convicted him of violating a protective order. The state court determined he "engaged in conduct that violated a portion of the order that involved protection against credible reports of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued." R., Vol. I at 78. Because of this conviction, the Department of Homeland Security initiated removal proceedings against him under 8 U.S.C. § 1227(a)(2)(E)(ii) in 2012. Appearing before the immigration court pro se, Al-Ghizi admitted the allegations in his Notice to Appear, and the court sustained the charge of removability.

Al-Ghizi subsequently hired an attorney and submitted an adjustment of status application and an application for asylum, withholding of removal, and protection under the Convention Against Torture. At the hearing, the IJ agreed with the Department that Al-Ghizi was ineligible for asylum and withholding of removal relief because his participation in a violent uprising against Saddam Hussein's regime in 1991 constituted material support of terrorist activity under the terrorism-related inadmissibility grounds statute. The IJ also concluded Al-Ghizi was not eligible for protection under the Convention because (1) Al-Ghizi failed to present evidence of torture, (2) the IJ found Al-Ghizi was not credible, and (3) "as a matter of discretion." R., Vol. III at 913. Al-Ghizi, through counsel, waived his right to

2

appeal.  But the United States did not remove Al-Ghizi because, at that time, Iraq refused to issue travel documents for repatriations of Iraqi deportees.  After several years, the United States and Iraq reached an agreement regarding the removal of Iraqi nationals.  The agreement prompted Immigration and Customs Enforcement to arrest Al-Ghizi and prepare him for removal.

The following year, in 2018, Al-Ghizi filed a motion to reopen his removal proceedings, acknowledging the 90-day deadline to file such a motion had long passed.  Al-Ghizi contended that the time-bar should not apply for two reasons: (1) there were changed country conditions in Iraq, and (2) his prior counsel provided ineffective assistance.  An IJ denied the motion, explaining that Al-Ghizi failed to show prejudice resulting from his counsel's ineffective assistance and that the country conditions in Iraq had not changed from 2012.  On appeal, the Board agreed with the IJ and dismissed the appeal.  Al-Ghizi then filed the present petition for review.

## II.  Analysis

We have jurisdiction to review the Board's denial of a motion to reopen through a petition for review under 8 U.S.C. § 1252(a)(1). We review its denial for abuse of discretion.  *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004).  "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements."  *Id.*

3

Al-Ghizi argues the Board erroneously concluded: (1) conditions in Iraq for Christian and Iraqi deportees with criminal records had not materially worsened between 2012 and 2018; (2) the IJ explicitly determined Al-Ghizi was inadmissible based on terrorism-related inadmissibility grounds; (3) Al-Ghizi's former counsel's ineffective assistance did not prejudice him; and (4) Al-Ghizi could not establish eligibility for deferral of removal under the Convention Against Torture. Because the second, third, and fourth alleged errors all relate to Al-Ghizi's previous counsel and the 2012 hearing, we address them together.

### A. Change in Country Conditions

Al-Ghizi first contends that the conditions in Iraq have changed since his 2012 hearing such that his motion to reopen, which typically must be filed within 90 days of the final removal order, is timely.

An alien facing removal generally must file a motion to reopen removal proceedings within 90 days of the date of entry of a final removal order. 8 U.S.C. § 1229a(c)(7)(C)(i). There is no time limit, however, if the motion to reopen "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). In our circuit, "a significant increase in the level of persecution constitutes a material change in country conditions for purposes of 8 U.S.C. § 1229a(c)(7)(C)" and "the [Board] abuses its discretion when it fails to assess and consider a petitioner's evidence that the persecution of others in his

4

protected category has substantially worsened since the initial application. *Qiu v. Sessions*, 870 F.3d 1200, 1204–05 (10th Cir. 2017).

Al-Ghizi advances three arguments in support of his contention that the conditions in Iraq have changed since the 2012 hearing to filing this motion in 2018: (1) there is heightened suspicion towards Iraqi deportees after then-President Trump's travel ban; (2) there are new risks to Iraqi deportees stemming from a general perception of them as criminals; and (3) there is increased persecution of Christians from ISIS and sectarian militias. But the Board and IJ carefully reviewed all the offered evidence in determining that Al-Ghizi did not face a greater risk of persecution or torture than he did in 2012.

Considering the first two arguments, the Board and the IJ discussed evidence from the government and Al-Ghizi, including anecdotal evidence and reports offered by Al-Ghizi and the testimony evidence offered by the government. The Board and IJ acknowledged Al-Ghizi's anecdotal evidence and reports that Iraqi government officials and police occasionally used torture to obtain confessions and during pre-trial detention. The Board and IJ also noted Al-Ghizi's evidence that Iraqis and the Iraqi government opposed their inclusion in then-President Trump's travel ban.

While Al-Ghizi supplied expert testimony and anecdotal evidence, the Board and the IJ found the government's evidence more persuasive. That evidence included expert witness testimony. As one witness stated, "The government of Iraq is focused on counter terrorism and post-ISIS stabilization, and I find the suggestion that the government of Iraq will be interested in detaining returning Iraqis, even those who

are criminals, for a substantial period of time, much less harming them, to be farfetched." R., Vol. II at 583. And another expert witness commented that only "those suspected of having committed serious criminal offenses *inside Iraq*, like murder and rape, would likely be detained." *Id.* at 631. The expert continued that "[d]etention is unlikely should the returnee be able to show family connections." *Id.* at 630. The Board noted Al-Ghizi has family connections in Iraq. Thus, there is sufficient evidence in the record to support the Board's conclusion that there was not material change in country conditions for purposes of 8 U.S.C. § 1229a(c)(7)(C).

Al-Ghizi's third argument regarding his conversion to Christianity fares no better. As a threshold matter, Al-Ghizi's conversion is not enough on its own to support a motion to reopen because "changed personal circumstances cannot support an untimely motion to reopen after a final order of removal." *Wei v. Mukasey*, 545 F.3d 1248, 1249 (10th Cir. 2008). Al-Ghizi instead must show that the Board abused its discretion in determining that the treatment of Christians in Iraq has not materially changed since 2012. The Board and IJ commented on Al-Ghizi's evidence that Christians in Iraq have suffered threats of violence for many years, particularly with the rise of ISIS in 2014. But this threat, the Board emphasized, has been effectively removed by ISIS's defeat in 2017. According to the Board, the conditions for Christians in Iraq have significantly improved although they remain far from ideal. Indeed, the Board observed that "[m]any internally displaced Christians and other minorities had returned to their homes without issue by September 2017." R., Vol. I at 7. Because the Board supported and explained its conclusion consistent with the

6

evidence in the record that the conditions in Iraq had not materially worsened from 2012 to 2018, it did not abuse its discretion.

We hold that the Board did not abuse its discretion in concluding that Al-Ghizi failed to demonstrate changed country conditions.  The record shows that the risk of torture and persecution for Christians and Iraqi deportees had either improved or remained the same between 2012 and 2018.

### B.  Ineffective Assistance of Counsel

Al-Ghizi next argues the 90-day deadline for his motion to reopen should be equitably tolled because his legal representation in 2012 constituted ineffective assistance of counsel.

"[T]he Fifth Amendment guarantees aliens subject to deportation the right to a fundamentally fair deportation proceeding."  *Osei v. I.N.S.*, 305 F.3d 1205, 1208 (10th Cir. 2002).  And "although there is no right to appointed counsel in deportation proceedings," an alien "can state a Fifth Amendment violation if he proves that retained counsel was ineffective and, as a result, the petitioner was denied a fundamentally fair proceeding."  *Id.*

The time limitation on motions to reopen may be equitably tolled in circumstances of ineffective assistance of counsel.  *Riley v. I.N.S.*, 310 F.3d 1253, 1258 (10th Cir. 2002).  To determine whether a particular case warrants equitable tolling, the Board must examine the alien's situation and his "due diligence along with his attempts to comply with the [Board]'s requirements detailed in *Matter of Lozada*, 19 I. & N. 637, 639 (BIA 1988)."  *Id.*  "Ineffective assistance of counsel in a

7

deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *In re Lozada*, 19 I. & N. at 638. The alien must also show that "he was prejudiced by his representative's performance." *Id.* To show prejudice, Al-Ghizi had to demonstrate a "reasonable likelihood that, but for the errors complained of, he would not have been deported." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004).

The Board assumed without deciding that Al-Ghizi's 2012 counsel provided ineffective assistance. But it concluded Al-Ghizi did not show prejudice. It explained that Al-Ghizi failed to demonstrate he would have been eligible for relief *but for* the ineffective assistance.

In arguing that the Board abused its discretion, Al-Ghizi asserts (1) he is not subject to the terrorism-related inadmissibility grounds, and (2) he is eligible for relief under the Convention Against Torture. We disagree.

### 1. *Terrorism-Related Inadmissibility Grounds*

Al-Ghizi raises two issues: (1) the Board incorrectly assumed that the 2012 IJ made a clear finding regarding the terrorism-related inadmissibility grounds bar, and (2) even if the 2012 IJ made an explicit finding, he presented evidence showing the bar is inapplicable.

Under the terrorism-related inadmissibility grounds, any individual who is a member of a terrorist organization or who engaged or engages in terrorism-related activity as defined by the Immigration and Nationality Act is inadmissible to the

8

United States and is ineligible for most immigration benefits.  8 U.S.C.

§ 1182(a)(3)(B)(i).  The term "engage in terrorist activity" includes providing

material support to a terrorism organization.  *Id.* § 1182(a)(3)(B)(iv)(VI).  "Material

support" includes actions such as providing a "safe house, transportation,

communications, funds, transfer of funds or other material financial benefit, false

documentation or identification, weapons (including chemical, biological, or

radiological weapons), explosives, or training" for terroristic activity.  *Id.*

Part of Al-Ghizi's 2012 hearing involved a dispute as to whether the terrorism-

related inadmissibility grounds barred Al-Ghizi from immigration benefits.  The 2012

IJ concluded Al-Ghizi was subject to the terrorism-related inadmissibility grounds

bar because his participation in the 1991 Shia uprising against Saddam Hussein

constituted material support of terrorist activity.

First, Al-Ghizi asserts the 2012 IJ did not provide a conclusion as to whether

he was barred from immigration benefits on terrorism-related inadmissibility

grounds.  But the hearing transcript proves otherwise: "I'm going to deny [relief]

because I don't think the respondent's [*sic*] met his burden of proof that he's entitled

to relief. . . . I don't think that he's met his burden of proving to the Court that he

wasn't part of the uprising in Nasseria."  R., Vol. III at 1032–33.  The Board did not

abuse its discretion in finding that the IJ "made a ruling at the respondent's 2012

hearing that the respondent was subject to the [TRIG-bar]."  R., Vol. I at 4.

Second, even if the 2012 IJ did not make this explicit finding, Al-Ghizi has not

produced any evidence demonstrating why he is not subject to the terrorism-related

9

inadmissibility bar.[1]  His motion lacks any allegations regarding his material support of terrorism during the 1991 Shia uprising.  He instead explains that he will provide additional information about his participation in the uprising at a future merits hearing.  But motions to reopen require an individual to "state the new facts that will be proven at a hearing to be held if the motion is granted."  8 U.S.C. § 1229a(c)(7)(B).  Because Al-Ghizi failed to provide any new evidence showing that he is not subject to the terrorism-related inadmissibility grounds bar, the Board did not abuse its discretion in finding no counsel-related prejudice and denying the motion to reopen.

In addition, Al-Ghizi presents several arguments on appeal that he did not previously raise.  For example, he now argues his attorney should have presented evidence or asked questions relevant to the Department of Homeland Security Secretary's discretionary TRIG exemption under 8 U.S.C. § 1182(d)(3)(B)(i) for participation in the 1991 Iraqi uprisings.  *See* DHS Secretary Janet Napolitano, *Implementation of New Exemptions Under Immigration and Nationality Act (INA) Section 212(d)(3)(B)(i) for Participation in Iraqi Uprisings*, USCIS (Nov. 12, 2012), https://www.uscis.gov/sites/default/files/document/legal-docs/Iraqi%20Uprisings% 20Exemption%2011_12.pdf ("On August 17, 2012 . . . the [DHS Secretary] exercised her discretionary authority not to apply most terrorism-related inadmissibility grounds to certain aliens for participation in the Iraqi uprisings against the

---

[1]  We add that Al-Ghizi admitted on his refugee application to participating in the uprising.

10

government of Saddam Hussein in Iraq from March 1 through April 5, 1991."). Al-Ghizi's failure to exhaust this argument places it beyond the scope of our consideration. *See* 8 U.S.C. §1252(d)(1); *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the same specific legal theory to the BIA before he or she may advance it in court."). The Board could not have abused its discretion by failing to rule in Al-Ghizi's favor on arguments the IJ or the Board never had the opportunity to consider.

### 2. *Convention Against Torture*

The Board also did not abuse its discretion in deciding that Al-Ghizi failed to show he was eligible for relief under the Convention Against Torture. Under the Convention, an applicant must establish that someone in his alleged circumstances will more likely than not be tortured in the country designated for removal. *Cruz-Funez v. Gonzalez*, 406 F.3d 1187, 1192 (10th Cir. 2005). As previously discussed, Al-Ghizi has not provided evidence establishing that he faces a particularized risk of torture. And the Board and the IJ emphasized that Al-Ghizi's remaining family in Iraq have not suffered any harm in recent years, further supporting the Board's conclusion. *See Mukhia v. Holder*, 507 F. App'x 824, 829 (10th Cir. 2013) ("[T]he continued presence of an alien's family members in the country of removal without further harm undercuts an asserted fear of persecution.").

In sum, the Board did not abuse its discretion in finding that Al-Ghizi suffered no prejudice from counsel's performance in the 2012 proceedings.

11

## III.  Conclusion

The Board did not abuse its discretion in denying Al-Ghizi's motion to reopen removal proceedings.  We deny Al-Ghizi's petition for review.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge